**CASEY EQUIPMENT CORPORATION,**
**Plaintiff,**

v.

**ARMCO, INC., Defendant.**

**Civ. A. No. 88–429.**

United States District Court,
W.D. Pennsylvania.

May 11, 1992.

Stanley M. Stein, Pittsburgh, Pa., for plaintiff.

Paul H. Titus, Pittsburgh, Pa., for defendant.

## MEMORANDUM OPINION

LEWIS, District Judge.

The above-captioned case involves a dispute between plaintiff Casey Equipment Corporation ("Casey"), which acts as a broker in selling equipment and other portions of steel mills, and Armco, Inc. ("Armco"), which hired Casey to sell certain of its equipment. Casey and Armco have filed cross-motions for partial summary judgment concerning only Count I of a four-count amended complaint. The issue presented is a pure question of law—whether, under the terms of the brokerage agreement, Casey is entitled to a commission for the sale of a wide flange mill. For the following reasons, the court will deny Casey's motion and grant Armco's motion.

### FACTS

On April 1, 1985, Casey and Armco entered into a brokerage agreement whereby Casey agreed to act as Armco's exclusive agent in selling equipment located at Armco's steel mill facilities in Houston, Texas. *See* Casey Exhibit Book, Ex. 1 (Contract, § 1.1).

The brokerage contract was to terminate on March 31, 1987, two years from the date of its execution, but it was ultimately extended to April 13, 1987. Casey and Armco agree that the contract terminated on April 13, 1987.

Section 4.2 of the brokerage contract provides:

> At the time of termination of the Agreement, ARMCO shall register as CASEY'S customers, all known potential customers who had inspected and with whom CASEY had direct and specific negotiations concerning the Equipment listed on Exhibit A. CASEY shall be entitled to a commission of seventeen and one-half percent (17–1/2%) on all sales made to such registered customers during the one (1) year period after termination of this Agreement.

Both parties agree that this section entitled Casey to a commission on any sales made to its customers within one year after April 13, 1987, or by April 13, 1988. This commission amount would be in addition to that Casey earned on sales made before April 13, 1987.

One sub-facility of its Houston operation which Armco wished to sell as an entire unit was a wide flange mill. The parties agreed that the sale of the wide flange mill would entitle Casey to a commission of 15%, instead of the 17–1/2% set forth in the brokerage agreement. Otherwise, the sale of the wide flange mill was subject to all other terms of the brokerage contract.

In June of 1986, while Casey's brokerage contract was in effect, a company called Northwestern Steel & Wire ("NSW") submitted a letter of intent to Armco, offering to purchase the entire wide flange mill for $23.5 million. Enclosed was a down payment of $1,000,000. Armco rejected this offer.

In July of 1986, still within the brokerage contract period, NSW submitted a second

letter of intent to Armco. Although some of its terms were different from those contained in the first letter of intent, NSW offered the same purchase price and a $1,000,000 down payment in the second letter. Armco accepted this offer.

On June 8, 1987, within the one-year grace period following termination of the brokerage agreement, NSW entered into an option contract with Armco. In the option contract, Armco agreed to extend the date for closing on the sale of the wide flange mill in exchange for $300,000. NSW's option on the wide flange mill was extended several times, and there may have been times when the option was not in effect.[1] It is clear, however, that as of June 22, 1989, an option agreement was in place, because on that date NSW exercised its option and purchased the wide flange mill and equipment.

Casey claims that, by virtue of the brokerage agreement, it is entitled to a 15% commission on $12,000,000 Armco received from the sale of the wide flange mill. Apparently, the cost of the wide flange mill alone, excluding the metal buildings and cranes, was $12,000,000. Armco denies that Casey is entitled to such a commission.

## DISCUSSION

### A. Applicable Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

When confronted with a motion for summary judgment, it is not the court's function to weigh the evidence and determine the truth of the matter, but rather simply to determine whether there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). An issue is genuine only if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id..*.

The moving party has the burden of identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The nonmoving party then must go beyond the pleadings and by affidavits, depositions, answers to interrogatories, and admissions on file, designate facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. at 2553.

### B. Preliminary Issues

The court must address two preliminary issues before delving into the merits of the parties' motions. First, Armco asserts that Casey's motion should be denied because it was filed out of time. On September 20, 1989, this court ordered that "defendant's motion for partial summary judgment shall be filed by November 27, 1989; any motion for summary judgment or partial summary judgment which plaintiff wishes to file shall also be filed by such date." Casey, however, filed its motion for partial summary judgment on January 2, 1990, without requesting an extension of time. Armco argues that Casey's motion should be denied because it was not timely filed. In light of the court's ultimate decision in favor of Armco, Armco's objection is moot.

Second, Casey suggests that Texas, not Pennsylvania, law should be applied. Both parties agree, however, that there is no significant difference between Pennsylvania and Texas contract law. In fact, both parties cite both Pennsylvania and Texas cases in their briefs. Therefore, no true choice of law issue exists. As a result, as a federal court sitting in diversity, the substantive law of the forum state, Pennsylvania, applies. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

---

**1.** Armco's Brief in Support of Motion for Partial Summary Judgment, p. 4; Armco's Reply Brief in Support of Motion for Partial Summary Judgment, p. 10.

## C. *The Brokerage Contract Dispute*

As noted previously, the issue presented in this case is purely legal—whether under the terms of the brokerage agreement, Casey is entitled to a 15% commission for the sale of Armco's wide flange mill. Casey asserts that the sale of the wide flange mill occurred when Armco accepted NSW's letter of intent on July 13, 1986, or at least in June, 1987, when Armco entered into an option agreement to extend the closing date of the sale to NSW. Because both of these events occurred before April 13, 1988, Casey concludes that a "sale" occurred within the grace period provided by the contract and that it is entitled to a commission.

Armco responds that Casey is not entitled to a commission because neither the letter of intent nor the option agreement constitute a sale. Armco argues that the sale of the wide flange mill occurred on June 22, 1989, when NSW exercised its option to purchase the mill and other equipment. Because this occurred after the expiration of the grace period provided for in the brokerage contract, Armco contends that Casey is not entitled to a commission on the sale to NSW.

Section 4 of the brokerage contract is entitled "Commission" and provides in relevant part:

In consideration of the services rendered pursuant to this Agreement, Casey shall be paid a commission calculated on the basis of the amount of sales revenues, excluding taxes, received by Armco covered by and pursuant to the terms of this Agreement.

For the purpose of calculating this commission, *sales shall mean the amount of actual payments received by Armco from purchasers under this Agreement.*

Contract, § 4.1 (emphasis added).

From this provision, it is clear that Casey was to be paid a commission on the basis of sales, and that "sales" are defined as the "amount of actual payments received by Armco." Casey, in fact, admits that this is the only place in the entire brokerage agreement where the term "sales" is fully defined.

In this case, "sales" to NSW consummated during the one year grace period include only the $1,000,000 which NSW paid with the letter of intent, not the $12,000,000 paid after NSW exercised its option in June, 1989. Armco paid Casey its commission on the $1,000,000.

Casey advances several arguments in support of its contention that it should receive a commission on the $12,000,000. None result in a ruling in its favor.

First, Casey asserts that the option agreement constituted a sale. This is not so. An option contract contemplates a subsequent contract of sale, which will arise only if the optionee elects to exercise the option. *Warner Bros. Theatres, Inc. v. Proffitt*, 329 Pa. 316, 198 A. 56 (1938). Surely, if the deal had fallen through, Casey would not assert that it is nevertheless entitled to a commission on the $12,000,000 because the parties had entered into an option agreement at some time while it was acting as a broker for Armco.

Second, Casey points to the portion of the contract which provides:

All sales by Casey under this Agreement shall require the purchaser to pay (50%) fifty per cent of the purchase price in cash or certified check at the time of sale with the balance of the purchase price to be paid in cash or by certified check before the purchased Equipment is dismantled or removed from the plant or forty-five (45) days from the date of the sale, whichever is earlier.

Contract, § 3.3. Casey contends that, according to this language, the "sale" to NSW occurred when it paid its $1,000,000 down payment in July of 1986, not when NSW paid the balance of the purchase price in 1989, upon closing the deal.

This provision, however, is contained in section 3 of the contract, entitled "Conditions of Sale." It addresses the procedure governing sales of equipment under the brokerage contract. In contrast, section 4 of the contract, recited earlier, is entitled "Commission" and relates to Casey's en-

titlement to a commission. Therefore, it is more appropriate to refer to section 4 in determining whether Casey is entitled to a commission than it is to refer to section 3. As this court has already noted, section 4 provides that "sales" are determined by examining actual payments received by Armco during the period in question.

Finally, Casey asserts that no terms in the brokerage contract conditions its right to be paid a commission on whether an option is exercised within the contract's time limit. This is true, but, as Armco points out, had Casey desired such terms, it could have negotiated such provisions into the brokerage contract.

Therefore, there being no genuine issue of material fact, it is apparent that Armco is entitled to judgment as a matter of law. Casey is not entitled to a 15% commission on the $12,000,000 received by Armco from the sale of the wide flange mill.

An appropriate order will follow.

### ORDER

AND NOW, this 11th day of May, 1992, upon consideration of the motion for partial summary judgment filed by defendant Armco, Inc. at Document No. 18 on November 27, 1989, the cross-motion for partial summary judgment filed by plaintiff at Document No. 22 on January 22, 1990, and the briefs and documentation submitted in connection therewith,

IT IS HEREBY ORDERED that the motion for partial summary judgment filed by Armco, Inc. is GRANTED and the motion for partial summary judgment filed by Casey Equipment Corporation is DENIED. Judgment shall be and hereby is entered in favor of Armco and against Casey on Count I of the amended complaint, which relates to Casey's claim for a commission from the sale of the wide flange mill.

IT IS FURTHER ORDERED that this court's previous pretrial order regarding scheduling is VACATED. From this date forth, the parties are to follow the instructions set forth in revised Exhibit A, which is attached, rather than those distributed on August 19, 1991. In the event of a conflict between the rule and the guidelines, the guidelines will govern.

IT IS ALSO ORDERED:

1. The Joint Report Regarding Settlement Negotiations is due by May 15, 1992. (This report is to be prepared in accordance with the instructions set forth on pages 3 and 4 of Exhibit A.)

2. Plaintiff's pretrial narrative statement is due by May 29, 1992.

3. Defendant's pretrial narrative statement is due by June 15, 1992.

4. If a jury trial has been demanded and the court has not ruled that the case is to proceed non-jury, counsel for all parties are to file a pretrial stipulation in the form attached as Exhibit B by June 29, 1992. Otherwise, counsel for all parties are to file joint proposed findings of fact and conclusions of law, which shall contain a single, integrated listing of agreed-upon proposed findings of fact and conclusions of law, by June 29, 1992. The parties are to note in either submission whether motions to dismiss or for summary judgment are outstanding. (Proposed findings of fact and conclusions of law as to which the parties cannot reach agreement are to be submitted to the court no later than ten (10) days before trial, as set forth on page 2 of Exhibit A.)

5. The pretrial conference will be held on July 17, 1992 at 2:00 p.m. in Room 1014, Tenth Floor, U.S. Post Office and Courthouse, Pittsburgh, PA 15219.

6. Motions in limine, proposed voir dire questions, points for charge, the stipulated insert and trial briefs (or findings of fact and conclusions of law and trial briefs if the case is non-jury) are due by August 3, 1992.

7. Trial will begin on August 17, 1992 at 9:00 a.m. in Courtroom No. 11, Tenth Floor, U.S. Post Office and Courthouse, Pittsburgh, PA 15219.

The court will not grant extensions of any of the above dates unless manifest

injustice would result from the refusal to do so.

## EXHIBIT A

## GUIDELINES FOR PRACTICE BEFORE JUDGE TIMOTHY K. LEWIS

### Effective 4/28/92

### I. DISCOVERY

The parameters of discovery will be set at the discovery/scheduling conference and will be reflected in the pretrial order. The court will not permit deviation from the dates stated in the pretrial order and these guidelines unless a manifest injustice would otherwise result. The court will not entertain motions for extension of discovery filed on the day discovery closes or after discovery has closed.

All discovery requests shall be initiated in sufficient time so that responses may be filed or depositions taken prior to the close of discovery. Parties intending to refer to discovery material in any proceeding shall provide the court with a copy of the material at the proceeding.

Counsel are expected to be familiar with the provisions of Rule 16, Federal Rules of Civil Procedure (regarding pretrial procedure) and the provisions of Rule 37, Federal Rules of Civil Procedure (regarding sanctions). Pursuant to Rule 37(a)(4), costs will be imposed upon the losing party of any discovery motion filed unless the court finds that the opposition to the motion was substantially justified or that other circumstances make an award of expenses unjust.

### II. MOTIONS AND BRIEFS

Counsel and pro se litigants are discouraged from communicating with the court by letter, whether to request rulings or to brief certain matters. Instead, all motions, briefs and requests for rulings should be filed with the Clerk of Court, unless the court directs otherwise.

Dispositive motions, such as summary judgment motions, along with briefs and supporting documentation, must be filed within twenty (20) days after the close of discovery.

Each motion for summary judgment shall be accompanied by a statement of material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue. Each statement shall include a clear and explicit reference to the parts of the record relied upon for support. Any opposition to a motion for summary judgment shall be accompanied by a separate, concise statement of material facts, responding to the numbered paragraphs in the movant's statement and setting forth all material facts which the respondent contends are disputed. These statements shall also include clear and explicit references to the parts of the record relied upon for support. The parties should attach to their submissions only those portions of deposition and other transcripts which are relevant to, and probative of, the issues before the court.

If it is apparent from the pleadings or from whatever record exists (i.e., depositions, admissions, answers to affidavits, interrogatories, etc.) that there are material facts in dispute, the parties are instructed that they should *not* file summary judgment motions. *See* Fed.R.Civ.P. 56(c) and 11.

Motions in limine, proposed voir dire questions, points for charge and trial briefs are due thirty (30) days before the trial date. Counsel are expected to have reviewed one another's proposed voir dire questions or points for charge prior to any conference thereon. Except to the extent required by unexpected developments at trial, any party failing to submit one or more of the foregoing documents by the deadline may be deemed to have waived the right to do so.

In addition, at least thirty (30) days before the trial date, counsel are to submit a stipulated insert, consisting of no more than one or two paragraphs, describing the positions of the parties and essential facts of the case. This insert will be used in the preliminary charge to the jury.

In all non-jury trials, the parties are required to file proposed findings of fact and conclusions of law upon which they cannot reach agreement no later than ten (10) days before the trial date.

All motions filed with the court must be accompanied by briefs. Failure of a movant to file a brief with his or her motion may result in the denial of the motion. (Notwithstanding this requirement, the parties need not file a brief in connection with a discovery dispute unless the court directs them to do so.)

Unless otherwise ordered by the court, a response is due within twenty (20) days of service of the motion. Failure of a respondent to comply with these instructions may result in the granting of the motion.

Ordinarily, the court will not order reply briefs or impose deadlines for their filing. A motion is ripe for decision, however, upon receipt of briefs in support and briefs in opposition, and the court will not wait for reply briefs to decide a motion.

*No brief shall exceed twenty-five (25) pages absent leave of court.*

Ordinarily, the court will not hear oral argument on motions. In the unusual case in which such argument would add substantially to the court's understanding of the issues presented, the parties may, by joint motion, request oral argument.

The pendency of motions ordinarily will not stay the discovery period or any other deadlines established by the court. Except for good cause shown, the filing of amended complaints, counterclaims or crossclaims will not extend the discovery period.

III. PRETRIAL STATEMENTS AND CONFERENCES; SETTLEMENT

The date upon which the parties' pretrial statements are due will be set at the discovery/scheduling conference and will be reflected in the pretrial order. The court will review the pretrial statements at the pretrial conference.

Except as modified by these guidelines, counsel shall comply with all requirements of Local Rule 5–II in preparing their pretrial statements. In addition to the requirements of Local Rule 5–II, the court requires that each party's pretrial statement shall contain the following information:

(a) A statement specifying whether the trial will be jury or non-jury and an estimate of the trial time necessary for a party's case in chief;

(b) A concise summary of the claims and defenses of all parties, including the respective versions of the facts and legal theories. This section should not merely reiterate the items contained within the pleadings;

(c) Counsel's agreement or disagreement with the authenticity and admissibility of the opposing party's exhibits.

Evidence to be offered at trial will be limited to that described in the pretrial statement. (The only exception will be evidence used for impeachment purposes.) Likewise, the witnesses who will testify will be limited to those identified in the pretrial statement.

Pretrial statements may not be amended except with approval of the court. The pleadings will be deemed to be merged into the pretrial statements filed by the parties.

*Settlement.* No later than ten (10) days after the close of discovery, the parties are to submit a Joint Report Regarding Settlement Negotiations. This report shall address, in chronological order, the history of settlement efforts to date, including:

(a) the initial demand;

(b) the response to the initial demand;

(c) any subsequent demands and responses thereto;

(d) the status of the negotiations at the time of the submission of the report, and;

(e) future contemplated efforts.

The report shall bear the signature of all counsel and, where appropriate, pro se litigants.

The court will extensively pursue settlement discussions at the pretrial conference. Trial counsel must attend the conference with settlement authority, and their principals must be either present or available by telephone during the conference.

IV. TRIAL

The specific date upon which the trial will begin will be determined at the discovery/scheduling conference and will be reflected in the pretrial order. **This date**

will not be continued unless there are compelling reasons or unless the Speedy Trial Act requires that a criminal case be tried first. Absence of a party's witnesses will not delay the trial. Such problems may be avoided by arranging for videotape depositions of witnesses through the Clerk of Court.

Exhibits to be offered at trial should be pre-marked in conformity with the sequence established in the exhibit lists contained in the pretrial statements. Plaintiff's exhibits are to be numbered consecutively and defendant's exhibits are to be lettered consecutively. In a trial involving voluminous documentary evidence, counsel should provide the court and each juror with a set of exhibits.

Counsel are advised that in jury trials, jurors will be permitted to take notes. In appropriate cases, jurors may also be permitted to question witnesses, subject to the court's specific guidelines and instructions governing the procedures for doing so. The court will provide each juror with a copy of the final charge.

Both the pretrial conference date and the trial date may be advanced, in which case the parties will be notified and given sufficient time to prepare for trial.

EXHIBIT B

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

CASEY EQUIPMENT CORPORATION, Plaintiff,

v.

ARMCO, INC., Defendant.

Civil Action No. 88–429.

PRETRIAL STIPULATION

*[The parties must address all material facts, law and deposition transcript references in this pretrial stipulation, or such matters may be excluded at trial. If additional space is needed to set forth the information called for in any section of* this form, supplemental pages may be attached, or this form may be retyped.]

I. *[Set forth the relief sought.]*

This is an action for:

II. *[Set forth a concise statement of the facts relied on to confer federal jurisdiction. State which facts are agreed to and which facts are disputed by the parties.]*

This court has jurisdiction because:

III. *[List by name and date filed outstanding motions to dismiss or for summary judgment and indicate whether such motions have been fully briefed. Do not recap the arguments contained within those motions.]*

The following motions to dismiss or for summary judgment remain outstanding:

IV. *[Set forth a comprehensive statement of all uncontested facts. The facts should be stated in logical order of proof without regard to objections to relevancy or materiality, although objections to specific facts should be noted. It is expected that all facts subject to ready verification by the parties will be stipulated, e.g., geographic locations and directions, measurements, dimensions, distances, duration of hospital confinement, periods of absence from work, and the amounts of medical bills and actual wage loss to date.]*

The following *facts* are stipulated by the parties and require no proof:

V. *[Set forth a concise statement of each issue of fact which is to be litigated at trial. For example, where negligence or contributory negligence is an issue, each claimed act or omission relied upon to establish negligence shall be specified.]*

The following issues of fact remain to be litigated at trial:

VI. *[Set forth a concise statement of each uncontested issue of law, and citations to the principal authorities supporting such statement.]*

The following points of *law* are stipulated by the parties and require no further briefing or argument to the court:

VII. *[Set forth a concise statement of each contested issue of law. Each party shall either include citations to the principal authorities relied on for its position as to each contested issue.]*

The following issues of law remain to be litigated at trial:

VIII. *[Identify any depositions or portions thereof which will be read into evidence as testimony at trial. Objections to the admissibility of any portion of such testimony shall be set forth specifically below.]*

The following deposition testimony will be offered at trial:

IX. *[Set forth or attach a statement of the qualifications of any witness who will testify as an expert at the trial. The statement should be in a form that can be read to the jury. Objections to the reading of any such qualifications shall be set forth specifically below.]*

X. STIPULATION

The foregoing admissions of fact and stipulations of law having been made, and the parties having specified the issues of fact and law remaining to be litigated, this pretrial stipulation shall supplement the pleadings and govern the course of the trial unless modified by order of court to prevent manifest injustice.

STIPULATED AND AGREED TO BY:

_____
Counsel for Plaintiff

_____
Counsel for Defendant